Opinion for the Court filed by Circuit Judge ROGERS.
Opinion concurring in the judgment filed by Circuit Judge HENDERSON.
ROGERS, Circuit Judge:
This is an appeal from the denial of a motion, filed pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, seeking the return of all materials seized by the Executive upon executing a search warrant for non-legislative materials in the congressional office of a sitting Member of Congress. The question on appeal is whether the procedures under which the search was conducted were sufficiently protective of the legislative privilege created by the Speech or Debate Clause, Article I, Section 6, Clause 1 of the United States Constitution. Our precedent establishes that the testimonial privilege under the Clause extends to non-disclosure of written legislative materials. See Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 420 (D.C.Cir.1995). Given the Department of Justice’s voluntary freeze of its review of the seized materials and the procedures mandated on remand by this court in granting the Congressman’s motion for emergency relief pending appeal, the imaging and keyword search of the Congressman’s computer hard drives and electronic media exposed no legislative material to the Executive, and therefore did not violate the Speech or Debate Clause, but the review of the Congressman’s paper files when the search was executed exposed legislative material to the Executive and accordingly violated the Clause. Whether the violation requires, as the Congressman suggests, the return of all seized items, privileged as well as non-privileged, depends upon a determination of which documents are privileged and then, as to the non-privileged documents, a balancing of the separation of powers underlying the Speech or Debate Clause and the Executive’s Article II, Section 3 law enforcement interest in the seized materials. The question of whether the seized evidence must be suppressed under the Fourth Amendment is not before us.
*656 We hold that the compelled disclosure of privileged material to the Executive during execution of the search warrant for Rayburn House Office Building Room 2113 violated the Speech or Debate Clause and that the Congressman is entitled to the return of documents that the court determines to be privileged under the Clause. We do not, however, hold, in the absence of a claim by the Congressman that the operations of his office have been disrupted as a result of not having the original versions of the non-privileged documents, that remedying the violation also requires the return of the non-privileged documents. The Congressman has suggested no other reason why return of such documents is required pursuant to Rule 41(g) and, in any event, it is doubtful that the court has jurisdiction to entertain such arguments following the return of the indictment against him while this appeal was pending.
I.
On May 18, 2006, the Department of Justice filed an application for a search warrant for Room 2113 of the Rayburn House Office Building, the congressional office of Congressman William J. Jefferson. The attached affidavit of Special Agent Timothy R. Thibault of the Federal Bureau of Investigation (“FBI”) described how the apparent victim of a fraud and bribery scheme who had come forward as a cooperating witness led to an investigation into bribery of a public official, wire fraud, bribery of a foreign official, and conspiracy to commit these crimes. The investigation included speaking with the Congressman’s staff, one of whom had advised that records relevant to the investigation remained in the congressional office. Based on the investigation, the af-fiant concluded that there was probable cause to believe that Congressman Jefferson, acting with other targets of the investigation, had sought and in some cases' already accepted financial backing and or concealed payments of cash or equity interests in business ventures located in the United States, Nigeria, and Ghana in exchange for his undertaking official acts as a Congressman while promoting the business interests of himself and the targets. Attachments A and B, respectively, described Room 2113 and the non-legislative evidence to be seized. The affiant asserted that the Executive had exhausted all other reasonable methods to obtain these records in a timely manner.
The warrant affidavit also described “special procedures” adopted by the Justice Department prosecutors overseeing the investigation. According to the affidavit, these procedures were designed: (1) “to minimize the likelihood that any potentially politically sensitive, non-responsive items in the Office will be seized and provided to the [pjrosecution [t]eam,” Thi-bault Aff. ¶ 136, and (2) “to identify information that may fall within the purview of the Speech or Debate Clause privilege, U.S. Const., art. I, § 6, cl. 1 or any other pertinent privilege,” id. Essentially, the procedures called for the FBI agents conducting the search to “have no substantive role in the investigation” and upon reviewing and removing materials from Room 2113, not to reveal politically sensitive or non-responsive items “inadvertently seen ... during the course of the search.” Id. ¶¶ 137-38. The FBI agents were to review and seize paper documents responsive to the warrant, copy all electronic files on the hard drives or other electronic media in the Congressman’s office, and then turn over the files for review by a filter team consisting of two Justice Department attorneys and an FBI agent. Id. ¶ 139. The filter team would determine: (1) whether any of the seized documents were not responsive to the search warrant, and return any such documents to the Congressman; and (2) whether any of the *657 seized documents were subject to the Speech or Debate Clause privilege or other privilege. Materials determined to be privileged or not responsive would be returned without dissemination to the prosecution team. Materials determined by the filter team not to be privileged would be turned over to the prosecution team, with copies to the Congressman’s attorney within ten business days of the search. Materials determined by the filter team to be potentially privileged would, absent the Congressman’s consent to Executive use of a potentially privileged document, be submitted to the district court for review, with a log and copy of such documents provided to the Congressman’s attorney within 20 business days of the search. The filter team would make similar determinations with respect to the data on the copied computer hard drives, following an initial electronic screening by the FBI’s Computer Analysis and Response Team.
The district court found probable cause for issuance of the search warrant and signed it on May 18, 2006, directing the search to occur on or before May 21 and the U.S. Capitol Police to “provide immediate access” to Room 2113. Beginning on Saturday night, May 20, more than a dozen FBI agents spent about 18 hours in Room 2113. The FBI agents reviewed every paper record and copied the hard drives on all of the computers and electronic data stored on other media in Room 2113. The FBI agents seized and carried away two boxes of documents and copies of the hard drives and electronic data. According to the brief for the Executive, the Office of the Deputy Attorney General directed an immediate freeze on any review of the seized materials. See Appellee’s Br. at 10.
On May 24, 2006, Congressman Jefferson challenged the constitutionality of the search of his congressional office and moved for return of the seized property pursuant to Fed. R. Ckim. P. 41(g). He argued, inter alio, that the issuance and execution of the search warrant violated the Speech or Debate Clause and sought an order enjoining FBI and Justice Department review or inspection of the seized materials. The following day, the President of the United States directed the Attorney General, acting through the Solicitor General, to preserve and seal the records and to make sure no use was made of the materials and that no one had access to them; this directive would expire on July 9, 2006.
On July 10, 2006, the district court denied the Congressman’s motion for return of the seized materials. Concluding that execution of the warrant “did not imper-missibly interfere with Congressman Jefferson’s legislative activities,” In re Search of the Rayburn House Office Bldg. Room No. 2113 Washington, D.C. 20515, 432 F.Supp.2d 100, 113 (D.D.C.2006), the district court noted that the warrant sought only materials that were outside of the “legitimate legislative sphere,” id. The district court rejected the Congressman’s claim that he had a right to remove documents he deemed privileged before execution of the warrant, reasoning that although “some privileged material was incidentally captured by the search” and was subject to “incidental review,” “the preconditions for a properly administered warrant that seeks only unprivileged material that falls outside the sphere of legitimate legislative activity are sufficient to protect against” undue Executive intrusion. Id. at 114. The Justice Department, therefore, could regain custody of the seized materials and resume review as of July 10, 2006. See id. at 119. On July 11, 2006, Congressman Jefferson filed a notice of appeal and a motion for a stay pending appeal. According to the brief for the Executive, the Attorney General ordered the FBI to regain custody of the *658 seized materials and imposed an immediate freeze on any review until the district court and this court considered the Congressman’s request for a stay pending appeal. See Appellee’s Br. at 13. The district court denied a stay on July 19, 2006. See In re Search of the Rayburn House Office Bldg. Room No. 2113, Washington, D.C. 20515, 434 F.Supp.2d 3 (D.D.C.2006).
This court, upon consideration of the Congressman’s emergency motion for a stay pending appeal filed on July 20, 2006, enjoined the United States, acting through the Executive, from resuming its review of the seized materials. See Order of July 25, 2006. Three days later, the court remanded the record to the district court to make findings regarding “which, if any, documents (physical or electronic) removed ... from [the] Congressman^] ... office pursuant to a search warrant executed on May 20, 2006, are records of legislative acts.” Order of July 28, 2006 (“Remand Order”). The court instructed the district court to: (1) copy and provide the copies of all the seized documents to the Congressman; (2) “using the copies of computer files made by [the Executive], search for the terms listed in the warrant, and provide a list of responsive records to Congressman Jefferson”; (3) provide the Congressman an opportunity to review the records and, within two days, to submit, ex parte, any claims that specific documents are legislative in nature; and (4) “review in camera any specific documents or records identified as legislative and make findings regarding whether the specific documents or records are legislative in nature.” Remand Order at 1. In the meantime, the court enjoined the Executive from reviewing any of the seized documents pending further order of this court. Subsequently, the court allowed the Executive to review seized materials that the Congressman “has conceded on remand are not privileged under the Speech or Debate Clause.” Order of Nov. 14, 2006. The court ordered expedition of this appeal, id., and oral argument was heard on May 15, 2007.
On June 4, 2007, the grand jury returned a sixteen-count indictment against Congressman Jefferson in the Eastern District of Virginia. United States v. Jefferson, No. 07-0209 (E.D. Va. indictment filed June 4, 2007). The indictment included charges of racketeering, solicitation of (and conspiracy to solicit) bribes, money laundering, wire fraud, and obstruction of justice.[1] Trial is scheduled to begin with jury selection in January 2008. This court’s jurisdiction of the Congressman’s appeal rests on the collateral order doctrine. See United States v. Rostenkowski, 59 F.3d 1291, 1296-1300 (D.C.Cir.1995). Neither party suggests that the return of the indictment divests this court of jurisdiction or renders this appeal moot or urges that the court not proceed to decide this appeal.[2] Cf. In re 3021 6th Ave. N., Billings, MT v. United *659 States, 237 F.3d 1039, 1041 (9th Cir.2001). We agree, for the Executive retains in its possession seized materials, including complete copies of every computer hard drive in Room 2113, which contain legislative material.[3] See City of Erie v. Pap’s AM., 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); see also Legal Assistance for Vietnamese Asylum Seekers v. Dep’t of State, 74 F.3d 1308, 1311 (D.C.Cir.), vacated on other grounds, 519 U.S. 1, 117 S.Ct. 378, 136 L.Ed.2d 1 (1996). Letting the district court’s decision stand until after the Congressman’s trial would, if the Congressman is correct, allow the Executive to review privileged material in violation of the Speech or Debate Clause.
II.
The Speech or Debate Clause provides that “for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place.” U.S. Const, art. I, § 6, cl. 1. The version of the Clause adopted by the Founders closely resembles the language adopted in the English Bill of Rights of 1689, which came out of the long struggle for governmental supremacy between the English monarchs and the Parliament, during which the criminal and civil law were used to intimidate legislators. By the time of the Constitutional Convention, the privilege embodied in the Speech or Debate Clause was “recognized as an important protection of the independence and integrity of the legislature,” United States v. Johnson, 383 U.S. 169, 178, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), and was to serve as a protection against possible “prosecution by an unfriendly executive and conviction by a hostile judiciary,” id. at 179.
In defining the protections afforded by the Clause, the Supreme Court has limited the scope to conduct that is an integral part of “the due functioning of the legislative process.” United States v. Brewster, 408 U.S. 501, 513, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). The Congressman does not dispute that congressional offices are subject to the operation of the Fourth Amendment and thus subject to a search pursuant to a search warrant issued by the federal district court. The Executive acknowledges, in connection with the execution of a search warrant, that there is a role for a Member of Congress to play in exercising the Member’s rights under the Speech or Debate Clause. The parties disagree on precisely when that should occur and what effect any violation of the Member’s Speech or Debate rights should have. The Congressman contends that the exercise of his privilege under the Clause must precede the disclosure of the contents of his congressional office to agents of the Executive and that any violation of the privilege requires return of all of the seized materials. The Executive offers that the special procedures described in the warrant affidavit “are more than sufficient to protect Representative] Jefferson’s rights ... under the Clause,” Appel-lee’s Br. at 15-16, and that any violation of the privilege does not deprive the Executive of the right to retain all non-privileged materials within the scope of the search warrant.
The Supreme Court has not spoken to the precise issue at hand. May 20-21, 2006 was the first time a sitting Member’s congressional office has been searched by the Executive. The Court has made clear, however, in the context of a grand jury investigation, that “[t]he Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch.” Gravel v. United States, 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Although in Gravel the Court *660 held that the Clause embraces a testimonial privilege, id. at 616, to date the Court has not spoken on whether the privilege conferred by the Clause includes ■ a nondisclosure privilege. However, this court has.
Beginning with the observation that the prohibition in the Speech or Debate Clause is “deceptively simple,” this court held in Brown & Williamson, 62 F.3d at 415, that the Clause includes a non-disclosure privilege, id. at 420. Noting that the purpose of the Speech or Debate Clause is “ ‘to insure that the legislative function the Constitution allocates to Congress may be performed independently,’ without regard to the distractions of private civil litigation or the periods of criminal prosecution,” id. at 415 (quoting Eastland v. U.S. Servicemen’s Fund, 421 U.S. 491, 502, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975)), the court rejected the view that the testimonial immunity of the Speech or Debate Clause applies only when Members or their aides are personally questioned:
Documentary evidence can certainly be as revealing as oral communications— even if only indirectly when, as here, the documents in question ... do not detail specific congressional actions. But indications as to what Congress is looking at provide clues as to what Congress is doing, or might be about to do — and this is true whether or not the documents are sought for the purpose of inquiring into (or frustrating) legislative conduct or to advance some other goals.... We do not share the Third Circuit’s conviction that democracy’s “limited toleration for secrecy” is inconsistent with an interpretation of the Speech or Debate Clause that would permit Congress to insist on the confidentiality of investigative files.
Id. at 420. As “[discovery procedures can prove just as intrusive” as naming Members or their staffs as parties to a suit, id. at 418 (italics omitted), the court held that “[a] party is no more entitled to compel congressional testimony — or production of documents — than it is to sue congressmen,” id. at 421. Further, the court noted, citing Eastland, 421 U.S. at 509, that when the privilege applies it is absolute. Brown & Williamson, 62 F.3d at 416. As such, “if the touchstone is interference with legislative activities,” then “the nature of the use to which documents will be put — testimonial or evidentiary — is immaterial.” Id. at 421. In the same vein, the court indicated that the degree of disruption caused by probing into legislative acts is immaterial, id. at 419; see also MINPECO, S.A. v. Conticommodity Servs., Inc., 844 F.2d 856, 860 (D.C.Cir.1988).
Thus, our opinion in Brown & Williamson makes clear that a key purpose of the privilege is to prevent intrusions in the legislative process and that the legislative process is disrupted by the disclosure of legislative material, regardless of the use to which the disclosed materials are put. See 62 F.3d at 419. The bar on compelled disclosure is absolute, see Eastland, 421 U.S. at 503, and there is no reason to believe that the bar does not apply in the criminal as well as the civil context. The Executive does not argue otherwise; the search warrant sought only materials not protected by the Speech or Debate Clause. Although Brown & Williamson involved civil litigation and the documents being sought were legislative in nature, the court’s discussion of the Speech or Debate Clause was more profound and repeatedly referred to the functioning of the Clause in criminal proceedings. See, e.g., Brown & Williamson, 62 F.3d at 416.[4]
*661 The search of Congressman Jefferson’s office must have resulted in the disclosure of legislative materials to agents of the Executive. Indeed, the application accompanying the warrant contemplated it. In order to determine whether the documents were responsive to the search warrant, FBI agents had to review all of the papers in the Congressman’s office, of which some surely related to legislative acts. This compelled disclosure clearly tends to disrupt the legislative process: exchanges between a Member of Congress and the Member’s staff or among Members of Congress on legislative matters may legitimately involve frank or embarrassing statements; the possibility of compelled disclosure may therefore chill the exchange of views with respect to legislative activity. This chill runs counter to the Clause’s purpose of protecting against disruption of the legislative process.
The Executive and the district court appear to have proceeded on the premise that the scope of the privilege narrows when a search warrant is at issue. In the district court’s view, the Speech or Debate Clause was not implicated by execution of the search warrant because a seizure of documents did not involve a testimonial element. See Rayburn, 432 F.Supp.2d at 111-12. Both also emphasized that the search warrant sought only non-privileged materials as a basis for distinguishing Brown & Williamson, and looked to the procedural protections afforded by the issuance of a valid search warrant available only in criminal investigations as eliminating any threat to Congress’s capacity to function effectively. Our concurring colleague takes much the same approach, failing to distinguish between the lawfulness of searching a congressional office pursuant to a search warrant and the lawfulness of the manner in which the search is executed in view of the protections afforded against compelled disclosure of legislative materials by the Speech or Debate Clause. The considerations voiced by our concurring colleague and the district court may demonstrate good faith by the Executive, but they fail to adhere to this court’s interpretation of the scope of the testimonial privilege under the Speech or Debate Clause, much less to the Supreme Court’s interpretation of what constitutes core legislative activities, see Brewster, 408 U.S. at 526, and the history of the Clause. While the Executive characterizes what occurred as the “incidental review of arguably protected legislative materials,” Appellee’s Br. at 15, it does not deny that compelled review by the Executive occurred, nor that it occurred in a location where legislative materials were inevitably to be found, nor that some impairment of legislative deliberations occurred.
Reliance by the Executive and the district court on Zurcher v. Stanford Daily, 436 U.S. 547, 566-67, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), is misplaced. There, the Supreme Court rejected the argument that the First Amendment imposed a bar to third-party search warrants absent a prior opportunity by the press to litigate the state’s entitlement to the material before it is turned over or seized. However, in Zurcher, the Supreme Court did not address whether a particular search was invalid because it was unconstitutional in its design and implementation; nor did it involve a privilege that absolutely shields records from non-voluntary disclosure. Contrary to the Executive’s understanding on appeal, it is incorrect to suggest that Congressman Jefferson’s position is that he was entitled to prior notice of the *662 search warrant before its execution, without regard to the Executive’s interests in law enforcement. The Congressman makes clear in his brief that he is not suggesting advance notice is required by the Constitution before Executive agents arrive at his office. See Appellant’s Br. at 36. Rather he contends legislative and executive interests can be accommodated without such notice, as urged, for example by the Deputy Counsel to the House of Representatives: “We’re not contemplating advance notice to the [M]ember to go into his office to search his documents before anyone shows up,” but rather that “[t]he Capitol [P]olice would seal the office so that nothing would go out of that office and then the search would take place with the [MJember there.” Tr. of Hr’g, June 16, 2006, at 35; see Appellant’s Br. at 36. Neither does the Congressman maintain that the Speech or Debate Clause protects unprivileged evidence of unprivileged criminal conduct. Nor has the Congressman argued that his assertions of privilege could not be judicially reviewed, only that the warrant procedures in this case were flawed because they afforded him no opportunity to assert the privilege before the Executive scoured his records. See Appel-, lant’s Br. at 37.
The special procedures outlined in the warrant affidavit would not have avoided the violation of the Speech or Debate Clause because they denied the Congressman any opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents. Indeed, the Congressman, his attorney, and counsel for the House of Representatives were denied entry into Room 2113 once the FBI arrived. The special procedures described in the warrant affidavit called for review by FBI agents and the several members of the Justice Department filter team before the Congressman would be afforded an opportunity to identify potentially privileged materials. This procedure is significantly different even from those the Executive has on occasion afforded to other privileges not protected in the Constitution; for example, in United States v. Search of Law Office, 341 F.3d 404, 407 (5th Cir.2003), the privilege holder was allowed an opportunity to identify documents protected under the attorney-client privilege at the point the search was completed. Although the Supreme Court in Weatherford v. Bursey, 429 U.S. 545, 558, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), distinguished between the receipt of privileged information by an agent of the Executive and by the prosecution team in the context of a civil rights claim based on a Sixth Amendment violation, the nature of the considerations presented by a violation of the Speech or Debate Clause is different. If the testimonial privilege under the Clause is absolute and there is no distinction between oral and written materials within the legislative sphere, then the non-disclosure privilege for written materials described in Brown & Williamson, 62 F.3d at 421, is also absolute, and thus admits of no balancing, cf. United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Moody v. IRS, 654 F.2d 795, 799 (D.C.Cir.1981). The compelled disclosure of legislative materials to FBI agents executing the search warrant was not unintentional but deliberate — a means to uncover responsive non-privileged materials.
There would appear to be no reason why the Congressman’s privilege under the Speech or Debate Clause cannot be asserted at the outset of a search in a manner that also protects the interests of the Executive in law enforcement. To the extent the Executive expresses concern about the burdens placed upon the district court and attendant delay during judicial review of seized materials, the Remand Order illustrates a streamlined approach by narrowing the number of materials the district *663 court may be required to review. The historical record utterly devoid of Executive searches of congressional offices suggests the imposition of such a burden will be, at most, infrequent. Regardless of whether the accommodation is by initially sealing the office to be searched before the Member is afforded an opportunity to identify potentially privileged legislative materials prior to any review by Executive agents or by some other means, seriatim initial reviews by agents of the Executive of a sitting Member’s congressional office are inconsistent with the privilege under the Clause. How that accommodation is to be achieved is best determined by the legislative and executive branches in the first instance.[5] Although the court has acknowledged, where it is not a Member who is subject to criminal proceedings, that the privilege might be less stringently applied when inconsistent with a sovereign interest, see Brown & Williamson, 62 F.3d at 419-20; supra note 4, this observation has no bearing here and is relevant, if at all, to the question of remedy for a violation, not the determination of whether a violation has occurred.
Accordingly, we hold that a search that allows agents of the Executive to review privileged materials without the Member’s consent violates the Clause. The Executive’s search of the Congressman’s paper files therefore violated the Clause, but its copying of computer hard drives and other electronic media is constitutionally permissible because the Remand Order affords the Congressman an opportunity to assert the privilege prior to disclosure of privileged materials to the Executive; the Executive advises, see Appellee’s Br. at 14, 62-63, that no FBI agent or other Executive agent has seen any electronic document that, upon adjudication of the Congressman’s claim of privilege, may be determined by the district court to be privileged legislative material.
III.
The question remains what the appropriate remedy is under Rule 41(g) for a violation of the Speech or Debate Clause. The 1989 Advisory Committee Notes to Rule 41(e)[6] state:
No standard is set forth ... to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property.... If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States’ legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable.
(emphasis added). Our task is to determine how to reconcile the scope of the protection that is afforded to a Member of Congress under the Speech or Debate Clause with the Executive’s Article II responsibilities for law enforcement.
Clearly a remedy in this case must show particular respect to the fact that the Speech or Debate Clause “reinforces the *664 separation of powers and protects legislative independence.” Fields v. Office of Eddie Bernice Johnson, 459 F.3d 1, 8 (D.C.Cir.2006) (en banc) (collecting cases). Congressman Jefferson argued in the district court that he has suffered irreparable harm with no adequate remedy available at law because the violation of his constitutional rights cannot be vindicated by an action at law or damages or any other traditional relief.[7] On appeal, however, the Congressman makes no claim that the functioning of his office has been impaired by loss of access to the original versions of the seized documents; the Remand Order directed that he be given copies of all seized documents. Remand Order of July 28, 2007. Perhaps more to the point, however, he contends that complete return of all seized materials is the only remedy that vindicates the separation of powers principles underlying the Speech or Debate Clause and serves as an appropriate deterrent to future violations.
Although the search of Congressman Jefferson’s paper files violated the Speech or Debate Clause, his argument does not support granting the relief that he seeks, namely the return of all seized documents, including copies, whether privileged or not. Taking his assertions in reverse order, such relief is unnecessary to deter future unconstitutional acts by the Executive. There is no indication that the Executive did not act based on a good faith interpretation of the law, as reflected in the district court’s prior approval and later defense of the special procedures set forth in the warrant affidavit. While the Fourth Amendment issue is not before us, the Supreme Court’s instruction in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is relevant to the extent the Congressman invokes deterrence as a rationale for the remedy he seeks under Rule 41(g). In addressing application of the exclusionary rule in the context of the Fourth Amendment, the Supreme Court pointed out in Leon that “[particularly when law enforcement officers have acted in objective good faith [on a warrant issued by a neutral magistrate] or their transgressions have been minor,” the possible benefit from exclusion, in terms of future deterrence, is limited, 468 U.S. at 907-08, 104 S.Ct. 3405. Additionally, with respect to concern about future actions by the Executive, this is the only time in this Nation’s history that the Executive has searched the office of a sitting Member of Congress. Our holding regarding the compelled disclosure of privileged documents to agents of the Executive during the search makes clear that the special procedures described in the warrant affidavit are insufficient to protect the privilege under the Speech or Debate Clause. This too should ameliorate concerns about deterrence.
At the same time, the remedy must give effect not only to the separation of powers underlying the Speech or Debate Clause but also to the sovereign’s interest under Article II, Section 3 in law enforcement. The following principles govern our conclusion. The Speech or Debate Clause protects against the compelled disclosure of privileged documents to agents of the Executive, but not the disclosure of non-privileged materials. Its “shield does not extend beyond what is necessary to preserve *665 the integrity of the legislative process,” Brewster, 408 U.S. at 517, and it “does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions,” id. at 528. This particular search needlessly disrupted the functioning of the Congressman’s office by allowing agents of the Executive to view legislative materials without the Congressman’s consent, even though a search of a congressional office is not prohibited per se. Still, the Congressman makes no claim in his brief, much less any showing, that the functioning of his office has been disrupted as a result of not having possession of the original versions of the non-privileged seized materials. Most important, to construe the Speech or Debate Clause as providing an absolute privilege against a seizure of non-privileged materials essential to the Executive’s enforcement of criminal statutes pursuant to Article II, Section 3 on no more than a generalized claim that the separation of powers demands no less would, as the Supreme Court has observed, albeit as to a qualified privilege, “upset the constitutional balance of ‘a workable government.’ ” Nixon, 418 U.S. at 707, 94 S.Ct. 3090 (quoting Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring)). The Supreme Court has instructed that the Clause is to be applied “in such a way as to insure the independence of the legislature without altering the historic balance of the three coequal branches of Government.” Brewster, 408 U.S. at 508, 92 S.Ct. 2531; see Fields, 459 F.3d at 9.
Applying these principles, we conclude that the Congressman is entitled, as the district court may in the first instance determine pursuant to the Remand Order, to the return of all materials (including copies) that are privileged legislative materials under the Speech or Debate Clause. Where the Clause applies its protection is absolute. For the reasons stated, absent any claim of disruption of the congressional office by reason of lack of original versions, it is unnecessary to order the return of non-privileged materials as a further remedy for the violation of the Clause. The Congressman has suggested no other reason why return of the non-privileged documents is required pursuant to Rule 41(g), and, in any event, it is doubtful that the court has jurisdiction to entertain such arguments following the return of the indictment. Unlike the Congressman’s request for the return of legislative materials protected by the Speech or Debate Clause, the further claim for the return of all non-privileged materials is not independent of the criminal prosecution against him, especially if the legality of the search will be a critical issue in the criminal trial. See In re, 3021 6th Ave. N., 237 F.3d at 1041 (citing DiBella v. United States, 369 U.S. 121, 131-32, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962)); In re Search of the Premises Known as 6455 South Yosemite, 897 F.2d 1549, 1554-56 (10th Cir.1990); United States v. Mid-States Exchange, 815 F.2d 1227, 1228 (8th Cir.1987) (per curiam). We agree with the Ninth Circuit’s holding that the 1989 amendment to Rule 41, eliminating the coupling of a motion for the return of property under Rule 41 and a motion to exclude evidence at trial, Fed. R.CRIM.P. 41(g), does not affect DiBella’s controlling force, which balanced the individual and government interests and their relationship to trial delays or disruptions, 369 U.S. at 124, 126, 129, 82 S.Ct. 654; see, e.g., In re 3021 6th Ave. N., 237 F.3d at 1041. See generally 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Prooedure § 3918.4 (2d ed.1992). Although the Congressman’s further request is solely for the return of property, his Rule 41(g) motion is “tied to a criminal prosecution in esse against the movant,” DiBella, 369 U.S. at 132, 82 S.Ct. 654; it is of no moment that the indictment was filed in another district, *666 id. The fact that the prosecution has commenced “will afford ... adequate opportunity to challenge the constitutionality of the search of his ... office,” and hence “there is now no danger that the [Executive] might retain [the Congressman’s] property indefinitely without any opportunity ... to assert on appeal his right to possession”; hence there is “no basis upon which to grant piecemeal review of [his further] claim [for non-privileged materials].” United States v. Search Warrant for 405 N. Wabash, Suite 3109, 736 F.2d 1174, 1176 (7th Cir.1984).
Accordingly, we hold that the Congressman is entitled to the return of all legislative materials (originals and copies) that are protected by the Speech or Debate Clause seized from Rayburn House Office Building Room 2113 on May 20-21, 2006. Further, as contemplated by the warrant affidavit, see Thibault Aff. ¶¶ 137-38, the FBI agents who executed the search warrant shall continue to be barred from disclosing the contents of any privileged or “politically sensitive and non-responsive items,” id. ¶ 138, and they shall not be involved in the pending prosecution or other charges arising from the investigation described in the warrant affidavit other than as regards responsiveness, id.

. The indictment charged: Count 1, Conspiracy to Solicit Bribes by a Public Official, Deprive Citizens of Honest Services by Wire Fraud, and Violate the Foreign Corrupt Practices Act, 18 U.S.C. § 371; Count 2, Conspiracy to Solicit Bribes by a Public Official, Deprive Citizens of Honest Services by Wire Fraud, id. § 371; Counts 3 & 4, Solicitation of Bribes by a Public Official, id. § 201(b)(2)(A); Counts 5 to 10, Scheme to Deprive Citizens of Honest Services by Wire Fraud, id. §§ 1343 and 1346; Count 11, Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(a); Counts 12-14, Money Laundering, 18 U.S.C. § 1957; Count 15, Obstruction of Justice, 18 U.S.C. § 1512(c)(1); Count 16, Racketeer Influenced Corrupt Organization, Pattern of Racketeering Activity (RICO), id. § 1962(c).

. See Letter from Roy W. McLeese III, Assistant United States Attorney, to Mark J. Lan-ger, Clerk (June 7, 2007); Letter from Robert P. Trout, Esquire, to Mark J. Langer, Clerk (June 11, 2007).

. Letter from Robert P. Trout, supra note 2.

. The court also acknowledged that the Supreme Court's "sensitivities” in Gravel, 408 U.S. at 614, 92 S.Ct. 2614, "to the existence of criminal proceedings against persons other than Members of Congress at least suggest *661 that the testimonial privilege might be less stringently applied when inconsistent with a sovereign interest.” Brown & Williamson, 62 F.3d at 419-20. As we note below, this possibility is not applicable to the present case.

. See Amicus Br. of Hon. Abner J. Mikva at 18; Amicus Br. of Scott Palmer, Elliot S. Berke, and Reid Stuntz, and Philip Kiko (former senior congressional staffers) at 26. Compare Amicus Br. of Thomas S. Foley, Newt Gingrich and Robert H. Michel (former Speakers of the U.S. House of Representatives) at 27-30 (suggesting specific alternative procedures for search of congressional offices); Amicus Br. of Stanley M. Brand et al. (former counsel to the U.S. House of Representatives and the Senate and scholars) at 28-29 (same).

. As a result of the 2002 Amendments, Rule 41(e) now appears with minor stylistic changes as Rule 41(g). United States v. Albinson, 356 F.3d 278, 279 n. 1 (3d Cir.2004).

. See In re Search of Law Office, 341 F.3d at 414 & n. 49 (holding that district court must find "at the very least, a substantial showing of irreparable harm” in order to suppress seized evidence under Rule 41(e), citing G.M. Leasing Corp. v. United States, 429 U.S. 338, 359-60, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977)); Ramsden v. United States, 2 F.3d 322, 325 (9th Cir.1993) ("agree[ing] with the Fifth, Eighth, and Tenth Circuits that a district court must determine whether a movant will suffer irreparable injury when considering whether to reach the merits of a preindictment Rule 41(e) motion”).