**UNITED STATES of America,**
**Plaintiff,**

v.

**Richard G. RENZI, James W. Sandlin,**
**Andrew Beardall, Dwayne**
**Lequire, Defendant.**

**No. CR 08–212 TUC DCB (BPV).**

United States District Court,
D. Arizona.

Feb. 18, 2010.

Ruben Jimenez, Phoenix, AZ, pro se.

### ORDER

DAVID C. BURY, District Judge.

This matter having been referred to Magistrate Judge Bernardo P. Velasco, he issued an Order on February 13, 2009, pursuant to 28 U.S.C. § 636(b)(1)(A). (Order: document 303). Magistrate Judge Velasco denied Defendant Renzi's Motion for a *Kastigar* Hearing and to Disqualify the Prosecution Team. Magistrate Judge Velasco held that a *Kastigar* hearing does not apply to the alleged Speech or Debate Clause violations before the Court. He explained that the Speech or Debate Clause privilege is one of use, *not* nondisclosure. Under the Speech or Debate Clause, any requisite hearing will be to determine whether any charged conduct must be dismissed, whether the Superceding Indictment must be dismissed, and whether to preclude use of privileged evidence at trial. There is no derivative use immunity under the Speech or Debate Clause, consequently, this is not a basis to disqualify the prosecution.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Crim.P. 59, the parties had ten days from the filing date of the Magistrate Judge's Order to file written objections with this Court. Failure to object waives a party's right to review. Fed.R.Crim.P. 59(a). The Court reviews *de novo* all questions presented by the parties in their objections. The Court may reconsider such matters where it is shown that the Magistrate Judge's Order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

Defendant Renzi filed an objection. The Government did not respond. The Government did not file any objection.

Defendant argues that Judge Velasco committed error when he failed to find that the protections afforded by the Speech or Debate Clause are "much stronger" than the Fifth Amendment privilege against self-incrimination and refused to apply the same procedural safeguards here as it would in the event the prosecution team had violated Defendant's Fifth Amendment rights. Defendant argues it was error for Judge Velasco to find that the Government does not bear the "heavy burden" of proving in a *Kastigar* hearing that it has not used protected material it obtained in violation of the Speech or Debate Clause in its investigation and prosecution of Congressman Renzi. In the event the Government fails to meet its burden at a *Kastigar* hearing, the Superseding Indictment must be dismissed, and even if the Government's case survives the hearing, the prosecution team must be disqualified based on its exposure to material protected by the Speech or Debate Clause. Defendant argues that these remedies are necessary to ensure the Government makes no further use of the protected material and to vindicate the Defendant for the Government's violation of the Speech or Debate Clause.

Defendant argues that Judge Velasco erred by adopting the reasoning of *In re Grand Jury Proceedings (Eilberg)*, 587 F.2d 589 (3rd Cir.1978), and rejecting *United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C.Cir.2007), and failing to discuss *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir.1983), a controlling decision. Defendant argues that a hearing must be held pursuant to *Kastigar* to determine if the Government can establish that the evidence it proposes to use in this case is neither privileged nor derived from privileged information. Instead, Judge Velasco followed *United States v. Swindall*, 971 F.2d 1531 (11th Cir.1992), and found that the Court need only determine whether the Superceding Indictment or any charges in it must be dismissed because they are based on evidence protected by the Speech or Debate Clause.

In *Kastigar*, the Supreme Court considered the Fifth Amendment right against self-incrimination and concluded that before a person may be compelled to testify against himself in violation of the Fifth Amendment privilege, he must be granted immunity from the use of the compelled testimony and any evidence derived directly and indirectly therefrom, but need not be granted transactional immunity for offenses related to the compelled testimony. *Kastigar v. United States*, 406 U.S. 441, 453–54, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). In other words, there is no absolute prosecutorial immunity for any offense related to the compelled testimony, but the Government must establish independent evidentiary support for any future prosecution free from the taint of the compelled testimony. In this way, the person who has been compelled to self-incriminate himself is put in the same position he would have been in had he exercised the privilege. The Government is without use of the compelled direct testimony and is derivatively barred from using the compelled testimony as an investigatory lead. *Id.* at 460, 92 S.Ct. 1653. Consequently, the immunity protects the privilege. A person compelled to give testimony against himself is entitled to a *Kastigar* hearing in any subsequent prosecution and the Government must affirmatively establish a legitimate source for the prosecution wholly independent of the compelled testimony.

▆▆▆ Defendant argues that this same immunity, both direct and derivative, is necessary to protect the legislative privilege under the Speech or Debate Clause, which provides that "for any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place." United States Const. AR. 1, § 6. The founding fathers adopted the Speech or Debate Clause to protect the integrity and independence of the legislature from the instigation of criminal charges against critical or disfavored legislators by the executive in a hostile judicial forum and to reinforce the separation of powers. *United States v. Johnson*, 383 U.S. 169, 178–180, 182, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). The purpose of the Speech or Debate Clause is to protect an independent legislative process free from Executive Branch interference. *Id.*

In *Johnson*, the Court reversed the conviction of a Congressman for conspiring to defraud the government, whereby the Congressman's part in the conspiracy included among other things making a speech on the House floor urging support for a financial institution under investigation by the Department of Justice. The government alleged that the Congressman made the speech in exchange for a bribe in the guise of a campaign contribution. The Court held the prosecution of the Congressman had depended o. n an inquiry

into his legislative acts on the floor of the House and his motives for performing them, which contravened the Speech or Debate Clause. *Id.* at 185, 86 S.Ct. 749. Whereas the court of appeals had dismissed the conspiracy count, the Supreme Court explained that the prohibited evidence was only a part of the conspiracy charge, therefore, the government should not be precluded from a new trial with all reference to the evidence offensive to the Speech or Debate Clause eliminated. *Id.*

Judge Velasco was correct when he rejected the Defendant's argument that the Speech or Debate Clause is " 'analogous to but much stronger than the Fifth Amendment privilege against self-incrimination.' " (Order filed 2/13/09 (Doc. 303) at 3 (citing Motion for *Kastigar* Hearing (Doc. 92) at 8)). Judge Velasco was correct when he found the privilege under the Speech or Debate Clause to be different from the Fifth Amendment privilege against self-incrimination. *Id.*

■ The Speech or Debate Clause does not protect a Congressman from prosecution for nonlegislative acts such as taking a bribe or soliciting a bribe in return for being influenced in the performance of official duties. *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). In *Brewster,* a Congressman, who was a member of the Senate Committee on Post Office and Civil Service, was indicted for soliciting and taking bribes in exchange for promising to vote a certain way on postage rate legislation. The lower courts had dismissed the indictment as a violation of the Speech or Debate Clause. The Supreme Court explained the lower courts applied the narrow holding in *Johnson* too broadly. *Id.* at 510, 92 S.Ct. 2531. According to the Supreme Court, *Johnson* "stands as a unanimous holding that a Member of Congress may be prosecuted under a criminal statute provided that the

Government's case does not rely on legislative acts or the motivation for legislative acts." *Id.* at 512, 92 S.Ct. 2531. The Court rejected the notion that the Speech or Debate Clause privilege for legislative acts could ever reach illicit conduct performed outside the House, *id.* at 514, 92 S.Ct. 2531, and that extending the privilege to include all things in any way related to the legislative process would sweep away the purpose of the privilege which is to protect the independence and integrity of the Legislative Branch by encouraging abuses such as vote selling, *id.* at 514–517, 92 S.Ct. 2531. The Court noted that the founding fathers drafted the Speech or Debate Clause to guard against pressure being exerted on the Parliament by the Executive and a hostile Judiciary, but also to guard against abuses found in the English Parliament where votes became a source of income for unscrupulous members. *Id.* at 517, 92 S.Ct. 2531. The Speech or Debate Clause strikes a delicate balance between the two by stopping short of creating super-citizens, immune from criminal responsibility. *Id.* at 516, 92 S.Ct. 2531. The Court held the shield of immunity need not extend beyond what is necessary to preserve the integrity of the legislative process. *Id.* at 516–517, 92 S.Ct. 2531. The Supreme Court held that the scope of the privilege extends to legislative acts or motivation for legislative acts. *Id.* at 525, 92 S.Ct. 2531.

■ The Government may proceed against a Congressman as long as it can make a prima facie case without using evidence of his legislative acts or his motivation for his legislative acts. *Id., cf., United States v. Helstoski,* 442 U.S. 477, 99 S.Ct. 2432, 61 L.Ed.2d 12 (1979) (affirming lower court's denial of motion to dismiss indictment allowing case to go forward; recognizing that exclusion of evi-

dence of past legislative acts will make prosecution more difficult).

■ Magistrate Judge Velasco correctly held that the privilege is one of use, not nondisclosure. The privilege is protected by the dismissal of an indictment or any charges brought against a Congressman which are dependent on privileged evidence and by requiring preclusion of any privileged evidence. Accordingly, the Government relies upon privileged evidence at its own peril.

This is in keeping with the Supreme Court's holding in *Helstoski v. Meanor*, 442 U.S. 500, 506–07, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979), that in the absence of an interlocutory appeal from a district court's refusal to dismiss an indictment, the protections of the Speech or Debate Clause would be lost because the Clause is designed to protect Congressmen not only from the consequences of litigation's results but also from the burdens of defending themselves. The privilege does not extend to being free from investigation into criminal conduct.

The cases relied on by Defendant do not support his assertion that a *Kastigar* hearing is necessary or that the prosecution team must be disqualified to remedy the alleged violations of the Speech or Debate Clause. In *United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C.Cir.2007), the court dealt with the unusual situation where the Department of Justice executed a search warrant on a Congressman's congressional office. The search warrant was limited to non-legislative materials, but when executed some privileged materials were necessarily captured by the search and subject to review by a filter team that screened the material without exposing it to the executive branch prosecutors. *Id.* at 657. The court held that under *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C.Cir.1995), the Speech or Debate Clause extends to non-disclosure of written legislative materials. The court held that "the compelled disclosure of privileged material to the Executive during execution of the search warrant for Rayburn House Office Building Room 2113 violated the Speech or Debate Clause and that the Congressman [was] entitled to the return of documents that the court determined to be privileged under the Clause." *Rayburn*, 497 F.3d at 657.

The *Rayburn* case was before the court on a Rule 41(g) Motion for Return of Property unlawfully seized pursuant to a search warrant. The Congressman asked for the return of all documents. He argued even nonprivileged documents be returned to deter the Executive from violating the Speech or Debate Clause in the future. *Rayburn* is an example of hard cases making bad law. While the court stopped short of issuing the judgment sought by the Congressman, it nevertheless chastised the Executive for executing a search warrant on Congressional offices, a bastion of privileged material. It appeared indisputable that search of such a forum would by necessity compel the disclosure of privileged material to the Executive, albeit unintentionally. The court opined that under the Speech or Debate Clause the Congressman must be present at the execution of the warrant and given the opportunity in the first instance to assert the privilege, with the Judiciary to decide any dispute before disclosure to the Executive. *Id.* at 662.

■ This Court agrees with Judge Henderson, who concurred in the judgment for return of the privileged property but wrote separately to express her concern over the dicta expressed by the majority that any nondisclosure privilege recognized under the Speech or Debate Clause could extend to prevent execution

of a search warrant. She correctly noted that under Supreme Court precedent "the Clause 'does not purport to confer a general exemption upon Members of Congress from liability or process in criminal cases. Quite the contrary is true.'" *Id.* at 666 (citing *Gravel v. United States,* 408 U.S. 606, 626, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972)). She noted that the sole basis for the majority's opinion rested on *Brown & Williamson Tobacco Corp. v. Williams,* a challenge to a civil subpoena obtained by private parties seeking documents in the possession of a congressional subcommittee. In *Brown & Williamson,* the nondisclosure privilege attached because the court found the documents were being used in the normal course of legislative activity. This is of course the threshold question in a Speech or Debate Clause case, whether it be civil or criminal. As Judge Henderson noted, Congressman Jefferson had foregone his opportunity to raise his arguments of privilege because he had ignored a subpoena duces tecum, by which the government had first attempted to secure the documents. *Rayburn,* 497 F.3d at 669 n. 7.

Judge Henderson found, and this Court agrees, that the Speech or Debate Clause does not shield against *any and all* Executive Branch exposure to records of legislative acts because this would jeopardize law enforcement tools that have never been considered problematic. *Id.* at 671–72. This Court also agrees that *Rayburn,* carried to its logical conclusion, would require advance notice of any search of a Congressman's property, including property outside his congressional office, such as his home or car, and that he be allowed to remove any material he deems to be covered by the legislative privilege prior to a search. If mere exposure by the Executive Branch violates the privilege agents could not conduct voluntary interviews of congressional staffers, who wish to expose criminal acts involving legislative activities or conduct surveillance of a Member or staffer who might discuss legislative matters with another Member or staffer. *Id.* at 672.

■ These are some of the challenges the Defendant makes in this case. This Court agrees with Judge Henderson that there is no Supreme Court precedent to suggest the Speech or Debate Clause applies to limit the Executive Branch's power to *investigate* criminal conduct. The law is to the contrary. The scope of the privilege has been limited even in the most protected forum, on the very floor of the House, to one of use. Since *Brewster,* this has been the balance struck to ensure an independent legislature, free from intimidation by Executive Branch, but careful not to create super-citizens, immune from criminal responsibility and susceptible to corruption. There is just as much reason to avoid creating *per se* safe-havens, such as congressional offices, that are free from criminal investigative searches.

The Defendant complains that Magistrate Judge Velasco failed to recognize Ninth Circuit precedent, *Miller v. Transamerican Press, Inc.,* 709 F.2d 524 (9th Cir.1983), which requires this Court to follow the majority reasoning in *Rayburn.* This Court has considered *Miller* and finds it does not support the majority opinion in *Rayburn.*

In *Miller,* the court quashed a subpoena to compel a former Congressman's testimony in a civil case seeking discovery related to an article inserted in the public record that suggested misappropriation of pension funds. The court rejected the plaintiff's argument that the ex-Congressman should be forced to testify because the purpose of the privilege was to forestall retaliatory criminal charges against a legislator, which was not a concern in re-

spect to a former legislator no longer holding office. Noting that the privilege applies in civil cases to prevent distraction from legislative duties, obstruction of ongoing legislative activity, or the burden of defense from civil liability, *id.* (citing *Eastland v. United Sates Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975)), and that these rationales do not apply to someone not actually serving in the legislature, the Court held the privilege nevertheless applied. The court based its holding on the purpose of the privilege more commonly referred to in criminal proceedings: to protect the freedom of speech in the legislative forum. *Id.* at 528–29, 95 S.Ct. 1813. The Court found that the evidence sought by the subpoena was a protected legislative act. Once the privilege attaches it is absolute, therefore, the ex-Congressman's testimony about the legislative act of inserting the article into the Congressional record and his motives for doing so was precluded and the court quashed the subpoena. *Id.* at 529–53, 95 S.Ct. 1813. The court in *Miller* followed *Brewster*, which is the law this Court intends to follow.

The Court finds that Magistrate Judge Velasco's Order is neither erroneous nor contrary to the law.

**Accordingly,**

**IT IS ORDERED** that after a full and independent review of the record in respect to the Defendant's objections, the Magistrate Judge's Order (document 303) is accepted and adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that Defendant's Motion for a *Kastigar* Hearing or to Disqualify the Prosecution Team (document 92) is DENIED.

**IT IS FURTHER ORDERED** that this matter remains referred to Magistrate Judge Bernardo P. Velasco for all pretrial proceedings and Report and Recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and LR Civ. 72.1(a), Rules of Practice for the United States District Court, District of Arizona (Local Rules).

## ORDER

BERNARDO P. VELASCO, United States Magistrate Judge.

On October 15, 2008, Defendant Renzi filed a motion for a *Kastigar* hearing and to disqualify the prosecution team for Speech or Debate Clause violations. (Doc. No. 92.) The Government filed a timely response (Doc. No. 160) and a reply memorandum was filed (Doc. No. 196).

The matter came on for Oral Argument before the Court on December 4, 2008.

The Court, having considered the briefing, arguments, and evidence presented, orders that the motion for a *Kastigar* hearing and to disqualify the prosecution team for Speech or Debate Clause violations be DENIED for the reasons discussed below.

### I. ARGUMENTS PRESENTED

Defendant Renzi asserts that the Court should hold a *Kastigar* hearing and disqualify the prosecution team based on the Government's repeated violations of the Speech or Debate Clause of the United States Constitution during its investigation of Renzi. Renzi contends that the Government violated the protections of the Speech or Debate Clause when it questioned Renzi's aides, intercepted Renzi's phone calls, and presented legislative act evidence to the grand jury.

Renzi further contends that the Government should be required to prove, in a *Kastigar* hearing, that it has not used the protected material that it obtained throughout the investigation in its prosecu-

tion of Renzi, and that failure of the Government to meet this burden should result in dismissal of the Indictment.

Renzi argues alternatively that if the Government meets the burden the Court should nevertheless disqualify the prosecution team based on its exposure to protected material.

The Government responds that Renzi is asking for unprecedented relief in this context, and that in many cases in which the Clause's protection have been invoked by indicted Members of Congress, none of the decisions has ever held that the government should be placed under such a burden.

## II. Discussion

### A. Motion for a Kastigar Hearing

Renzi asserts that if the Government cannot satisfy its burden of proving that it made no evidentiary use of material protected by the Speech or Debate Clause before the grand jury, the Court must dismiss the indictment.

Before the Court addresses the question of whether or not a *Kastigar*-type hearing is mandated by the record before this Court, the Court must first determine whether or not *Kastigar* applies in the context of alleged Speech or Debate Clause violations before the grand jury.

 Grand jury witnesses and targets are entitled to limited Fifth Amendment protections. *United States v. Mandujano*, 425 U.S. 564, 573, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). If a witness invokes the Fifth Amendment's privilege against self-incrimination, a grant of immunity from use and derivative use is sufficient to compel testimony over a claim of the privilege. *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The Supreme Court in *Kastigar* reasoned that the grant of immunity must be coextensive with the scope of the privilege, and thus a grant of only transactional immunity would be incomplete as it would not protect a witness from future prosecution based on knowledge and sources of information obtained from the compelled testimony. *Id.*, at 453–54, 92 S.Ct. 1653 (citations omitted). The Court considered use and derivative use immunity coextensive with the scope of the privilege because the total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an investigatory lead and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures. *Id.*, at 460, 92 S.Ct. 1653. The Supreme Court noted that, once a defendant demonstrates that he has testified under a state grant of immunity, the government has the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence. *Id.* This burden imposes on the prosecution "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* The Supreme Court considered this a very substantial protection, "commensurate with that resulting from invoking the privilege itself." *Id.*, at 461, 92 S.Ct. 1653.

 Defendant argues that the Speech or Debate Clause is "analogous to but much stronger than the Fifth Amendment privilege against self-incrimination." (Doc. No. 92, at 8) Although it may be analogous to the Fifth Amendment privilege, it is too sweeping and conclusory to assert that it is "stronger." It is merely different. Without question, the privileges provided by the Speech or Debate Clause "are vitally important to our system of government and therefore are entitled to be treated by the courts with the sensitivity that such

important values require." *Helstoski v. Meanor,* 442 U.S. 500, 506, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). The contours of the privilege, however, are different than those granted by the Fifth Amendment's prohibition against self-incrimination.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representative] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The Supreme Court has recognized that the Speech or Debate Clause was "designed to protect Congressmen 'not only from the consequences of litigation's results but also from the burden of defending themselves.' " *Helstoski v. Meanor,* 442 U.S. 500, 508, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). The Supreme Court, ruling that direct appeal of a motion to dismiss an indictment for Speech or Debate Clause violations was directly appealable to the Court of Appeals, commented that in order to avoid exposure to being questioned for acts done in either House, and thereby enjoy the full protection of the Clause, the challenge to the indictment must be reviewable before exposure to trial occurs. *Id.*

In *Johnson,* the Supreme Court agreed that retrial was necessary because a portion of the conspiracy count specifically charged conduct protected by the Speech or Debate Clause. *United States v. Johnson,* 383 U.S. 169, 176–77, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). The Supreme Court, however, remanded for a new trial on the original indictment, requiring only deletion of that portion of the indictment charging protected conduct. *Id.* at 185, 86 S.Ct. 749. Though the grand jury that had returned the indictment obviously had heard evidence of the protected conduct, which it had specifically alleged to be part of the conspiracy, the Supreme Court raised no objection to retrial on the redacted indict-

ment. On appeal from Johnson's second conviction, the Fourth Circuit considered and rejected his challenge to the grand jury's receipt of privileged evidence. 419 F.2d at 58.

After remand in *Helstoski,* however, the United States Court of Appeals, Third Circuit, considered the extent of the privilege granted under the Speech or Debate Clause and found the privilege to be "not one of nondisclosure but of nonevidentiary use" as well as "testimonial in nature" such that a Congressman may not be required to testify to a legislative act even in third party cases. *United States v. Helstoski,* 635 F.2d 200, 203–204 (3rd Cir.1980); see also *In re Grand Jury Proceedings (Cianfrani),* 563 F.2d 577 (3rd.Cir.1977) ("The privilege is not one of nondisclosure, but of nonevidentiary use ... permit[ting] legislative actions, as well as free and unfettered legislative debate, without exposing the legislator to criminal liability."); *In re Grand Jury Proceedings (Eilberg),* 587 F.2d 589 (3rd Cir.1978) (In addition to testimonial privilege, the Speech or Debate Clause, unlike privileges such as attorney-client, physician-patient, or priest-penitent, the purpose of which is to prevent disclosure which would tend to inhibit the development of socially desirable confidential relationships, "the Speech or Debate privilege is at its core a use privilege."); contra *United States v. Rayburn House Office Bldg.,* 497 F.3d 654 (D.C.Cir.2007) (Protections that the Clause affords include a "testimonial privilege [that] extends to nondisclosure of written legislative materials.").

The Third Circuit in *Helstoski* looked "behind the face of the indictment" and concluded that if the clause is to serve its purpose, the "shield must be raised at the beginning" to prevent a hostile executive from effectively neutralizing a troublesome legislator, despite the absence of admissi-

ble evidence to convict, simply by ignoring or threatening to ignore the privilege in a presentation to a grand jury. *Id.*, at 205. The Third Circuit affirmed the district court's dismissal of two counts of the indictment, noting that the district court "explicitly found that improper testimony before the grand jury was a substantial factor underlying the indictment." *Id.*, at 204. The Third Circuit also noted that, particularly in the circumstances of that case, where the infection could not be excised, it was unwilling to adopt an interpretation that the case could be tried without reference to protected matters and thus the grand juries' considerations of the privileged material was not fatal to the indictment. *Id.*, at 205. The Third Circuit ultimately held that an indictment based on wholesale violation of the Speech or Debate Clause before a grand jury cannot survive. *Id.*, at 205.

Shortly after the Third Circuit considered the expanse of the protections afforded by the Speech or Debate Clause in *Helstoski*, the Second Circuit considered a district court's decision to deny a motion to dismiss an indictment of a United States Senator based on the testimony before the grand jury of two members of the Senators staff, in addition to the production of office files regarding private immigration bills at issue in the so-called AB–SCAM operation. *United States v. Williams*, 644 F.2d 950 (2nd Cir.1981). The district judge had found merit in the Senator's contention that his staff member's testimony should not have been heard by the grand jury, however, the district judge also found that this testimony constituted an insignificant portion of the evidence presented to the jury and was not a factor in the issuance of the indictment, and additionally, the introduction of the tainted testimony raised no "substantial question of whether the grand jury had sufficient competent evidence to establish probable cause." *Id.*, at 952 (quoting *United States v. Myers*, 635 F.2d 932 (2nd Cir.1980)).

In *United States v. Swindall*, the Eleventh Circuit considered the proper remedy for a violation of the privilege that occurs before the grand jury. 971 F.2d 1531 (11th Cir.1992). The Eleventh Circuit reasoned that a violation that occurs in the grand jury phase must be vindicated in the grand jury phase. *Id.*, at 1546–47. The Court noted, however, that "[n]ot every improper reference to Speech or Debate material before the grand jury is a violation of the privilege." *Id.*, at 1547 n. 20. The Eleventh Circuit recognized that, generally, a court will not look behind the face of an indictment, however, a court will consider the evidence received by the grand jury when what transpired before the grand jury itself violates a constitutional privilege. *Id.*, at 1547 (citing *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Helstoski*, 635 F.2d at 203). The Eleventh Circuit noted two distinct privileges the clause affords: (1) freedom from questioning, which is in the nature of a testimonial privilege, and (2) freedom from liability, which means that reference may not be made in court to a defendant's legislative activities. *Swindall, supra*, at 1544.

The Eleventh Circuit stated that a member's Speech or Debate privilege is violated if the Speech or Debate material exposes the member to liability, but "a member is not necessarily exposed to liability just because the grand jury considers improper Speech or Debate material." *Id.*, at 1548. The Court further explained that "[i]f reference to a legislative act is irrelevant to the decision to indict, the improper reference has not subjected the member to criminal liability.... The case can proceed to trial with the improper references expunged." *Id.* The Court applied this reasoning to synthesize the hold-

ings in *Johnson, Brewster,* and *Helstoski,* holding that the indictment should be dismissed, not because the improper references were widespread, rather, "because evidence of Swindall's legislative acts was an essential element of proof with respect to the affected counts." *Id.,* at 1549. Additionally, the Court clarified that in order to protect the first distinct privilege, freedom from questioning, a violation occurs automatically, requiring dismissal of the affected counts without consideration of whether or not the testimony was essential to the grand jury's decision to indict. *Id.*

■■ The Eleventh Circuit's reasoning is compelling, and this Court determines that, at least in some instances, it is necessary for the Court to look behind the face of the indictment to determine whether the presentation of evidence to a grand jury in violation of the Speech or Debate Clause resulted in a decision by the grand jury to indict. This determination, however, does not necessarily translate into the necessity of the Court to hold a *Kastigar* hearing, the ultimate question presented by this motion. Renzi has not provided sufficient authority to establish that the prosecution is required to prove that all the evidence it proposes to use was derived from legitimate independent sources.

As the Supreme Court's decision in *Kastigar* was crafted to ensure that the immunity provided a witness compelled to testify before a grand jury left the witness and prosecutorial authorities in "substantially the same position as if the witness had claimed the Fifth Amendment privilege", See *Kastigar, supra,* at 462, 92 S.Ct. 1653, so too must this Court determine what relief, if any, is coextensive with the assertion of a violation of the privileges provided under the Speech or Debate Clause. The contours of the Speech or Debate privilege, unlike the Fifth Amend-

ment protections against self-incrimination, provide freedom from questioning and freedom from liability, which means that reference may not be made in court to a defendant's legislative activities. If, for example, a member is compelled to testify before a grand jury, the result, under *Swindall,* would be dismissal of charges related to the testimony. If the introduction of legislative acts before a grand jury resulted in the return of an indictment against a member, under *Swindall* that too would result in dismissal of charges dependent upon the evidence introduced in violation of the privilege. These are the contours of the protections coextensive with the privilege. Defendant Renzi is mistaken in his argument that the privilege extends to requiring the prosecution to demonstrate, in a *Kastigar* hearing, that its case against Renzi is based upon evidence completely independent of the evidence it obtained in violation of the Speech or Debate Clause. The privilege reaches only as far as it must so that a member "may not be made to answer—either in terms of questions or in terms of defending himself from prosecution" for his legislative acts. *Gravel v. United States,* 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). As the Third Circuit determined, unlike the Fifth Amendment privilege against self-incrimination, the extent of the privilege granted under the Speech or Debate Clause is not one of nondisclosure. *Helstoski,* 635 F.2d at 203–204. The remedy outlined in *Swindall* would protect a member to the same extent that a claim of the privilege would protect him: from testimonial violations, as well as criminal liability; thus fulfilling the purpose of the Clause to "prevent intimidation by the executive and accountability before a possibly hostile judiciary" *United States v. Johnson,* 383 U.S. 169, 181, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966)—much as use and derivative use immunity protects an individual from "our

unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates 'a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load,' ... our respect for the inviolability of the human personality and of the right of each individual 'to a private enclave where he may lead a private life,' our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes 'a shelter to the guilty,' is often 'a protection to the innocent.'" *Murphy v. Waterfront Com'n of New York Harbor* 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (internal citations omitted).

■ Normally, an indictment is not subject to dismissal on the ground that there was "inadequate or incompetent" evidence before the grand jury. *Costello v. United States,* 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397 (1956). This rule has been specifically applied to reject a claim that a grand jury heard some evidence protected by the Speech or Debate Clause. *United States v. Johnson,* 419 F.2d 56 (4th Cir.1969); *United States v. Jefferson,* 546 F.3d 300 (4th Cir.2008). In *United States v. Rostenkowski,* the D.C. Circuit allowed that the protection of the Speech or Debate Clause extends to grand jury materials, protecting not only reference to Speech or Debate Clause materials on the face of the indictment, but also against its use before the grand jury "at least in some circumstances." 59 F.3d 1291, 1298 (D.C.Cir.1995). The Court concluded "only that at some point the presentation of such material requires the court to dismiss the resulting bill." *Id.,* at 1299. Despite this conclusion, the Court rejected an argument that the defendant was entitled to a *Kastigar* hearing in which the government must show that it has an independent source for all of the evidence that it plans to present at trial; noting that in the legal setting considered in *Kastigar,* "the need for a pre-trial hearing is quite compelling" however, "the Government does not have to establish an independent source for the information upon which it would prosecute a Member of Congress. Rather, the burden of proof is the other way round: the Member must show that the Government has relied upon privileged material." *Id.* The *Rostenkowski* Court noted that in some cases courts have held pre-trial hearings, but only because the face of the indictment was insufficiently specific for the court to determine whether any charge in the indictment was based on conduct protected by the Speech or Debate Clause, and that those cases are best understood as being in aid of a challenge to the facial validity of the indictment. *Id.*

This reasoning is consistent with *Swindall, supra.* A pre-trial hearing may be necessary to determine if privileged materials were essential to the grand jury's decision to indict, but the Government does not bear the burden of establishing an independent source for the information upon which it would prosecute Renzi in this case. Additionally, the Government argues that it would make no sense to apply *Kastigar* in this context as the Clause describes activities that are generally public in nature, and that these are matters that the Executive Branch is free to review without violating the Clause, but may not use against a Member in a criminal or civil case. This argument is persuasive. Accordingly, Defendant Renzi's

**1004**

motion for a *Kastigar* hearing will be DE-NIED.

### B. Motion for Disqualification of the Prosecution Team

■ Defendant Renzi argues further that the Court should disqualify the prosecution team based upon its exposure to information protected by the Speech or Debate Clause. Renzi relies on the D.C. Circuit's decision in *United States v. Rayburn House Office Bldg.*, 497 F.3d 654 (D.C.Cir.2007) to support his assertion. In *Rayburn*, the D.C. Circuit held that a search of Congressman William J. Jefferson's paper files in his congressional office by the Federal Bureau of Investigation (FBI) violated the Speech or Debate Clause, inasmuch as the search allowed the agents to review privileged materials without the Congressman's consent. *Id.*, at 663. The majority opinion concluded that, as was contemplated by the search warrant affidavit in that case, "the FBI agents who executed the search warrant shall continue to be barred from disclosing the contents of any privileged or 'politically sensitive and nonresponsive items,' and they shall not be involved in the pending prosecution or other charges arising from the investigation described in the warrant affidavit other than as regards responsiveness." *Id.*, at 666 (internal citations omitted).

This case is distinct from *Rayburn*, in that the disqualification of the FBI agents who executed the search was contemplated by the search warrant affidavit itself. *See id.*, at 666. The search warrant in that case contemplated procedures wherein the FBI agents conducting the search would have no substantive role in the investigation, and would not reveal politically sensitive or non-responsive items inadvertently seen during the course of the search. *Id.*, at 656. The D.C. Circuit simply approved

of this approach already in place under the warrant. There was no consideration or determination of any further disqualification of any members of the prosecution team outside of the search warrant team and the filter team already in place in *Rayburn*. Because it was not at issue, the furthest reach of potential disqualification the D.C. Circuit would consider appropriate in the circumstances is not known. Circuit Judge Henderson, concurring in the opinion, but disagreeing with the majority's reasoning and dicta, stated that "to conclude that the Clause's shield protects against *any* Executive Branch exposure to records of legislative acts would jeopardize law enforcement tools "that have never been considered problematic." " *Id.*, at 671 (Henderson, concurring in judgment) (citations omitted) (emphasis in original). Circuit Judge Henderson opined that the Executive Branches execution of a search warrant on a congressional office-with its unavoidable but minimal exposure to records of legislative acts-does not constitute questioning within the meaning of the Speech or Debate Clause, and further commented that:

> If Executive Branch exposure alone violated the privilege, 'agents ... could not conduct a voluntary interview with a congressional staffer who wished to report criminal conduct by a Member or staffer, because of the possibility ... that the staffer would discuss legislative acts in ... describing the unprivileged, criminal conduct.' Such a rule would also 'presumably apply to surveillance of a Member or staffer who might discuss legislative matters with another Member or staffer.' Furthermore, '[d]epriving the Executive of the power to *investigate* and prosecute and the Judiciary of the power to punish bribery of Members of Congress is unlikely to enhance legislative independence.'

*Id.,* at 672–73. (citations omitted) (emphasis in original).

This reasoning is consistent with this Court's conclusion above, that the privilege is not one of non-disclosure, but of freedom from questioning, and freedom from liability; neither privilege necessitating disqualification of the prosecution team in this case.

Accordingly,

IT IS HEREBY ORDERED Defendant Renzi's motion for a *Kastigar* hearing and to disqualify the prosecution team for Speech or Debate Clause violations (Doc. No. 92.) is DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed.R.Crim.P. 59, the parties have ten (10) days from the date of this Order to file written objections with the district judge. Failure to object in accordance with Rule 59 waives a party's right to review. Any objections filed should be filed as **CR 08–0212–TUC–DCB.**